SARAH E. NICHOLS, Administratrix, etc., Respondent, *v.* CHARLES F. MACLEAN, Appellant.

While the legislature may abolish an office, diminish the salary or change the mode of compensation during the term of an incumbent, subject only to constitutional restrictions, yet within these limits the right to an office carries with it the right to the emoluments, and an officer unlawfully dispossessed of his office may, upon his reinstatement therein, maintain an action against an intruder, to recover the damages resulting from the intrusion ; as a general rule, the salary or fees of the office received by the intruder are the measure of damages.

Statement of case.

Plaintiff was duly appointed police commissioner of the city of New York ; he duly qualified and entered upon the performance of the duties of the office. Subsequently he was unlawfully removed by the mayor, and defendant appointed for the unexpired term. The latter, on presentation of his certificate of appointment, was recognized by the board of police commissioners, and assumed the duties of the office against the protests of plaintiff, who claimed the appointment was unauthorized. The proceedings of the mayor in removing plaintiff were reversed and annulled on *certiorari,* and thereupon he was again officially recognized by the board, and resumed the duties of his office ; during the time of his exclusion he was ready and willing to perform such duties. Defendant drew the salary of the office during the time he performed its duties. *Held,* that an action to recover the amount so received was maintainable ; and that the record in the *certiorari* proceedings was properly admitted in evidence against the defendant on the trial of the action.

As to whether in such case the record, in the absence of collusion or fraud, is conclusive, *quære.*

The distinction between this case and one where the officer *de jure* has not been reinstated pointed out.

*It seems* in the latter case the remedy of the officer is by action in the nature of a *quo warranto ;* but such an action will not lie when the intruder has voluntarily surrendered the office.

An illegal exercise of the power of appointment to fill an assumed vacancy confers no additional protection upon the appointee because coupled with the fact of a prior summary removal of the rightful incumbent by the officer who made the appointment, in the exercise of a *quasi* judicial discretion.

The doctrine which protects rights acquired on the faith of a judgment, notwithstanding its subsequent reversal, is not applicable to such a case.

(Argued February 8, 1886; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 10, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial.

This action was originally brought by Sydney P. Nichols to recover damages for the alleged unlawful usurpation by defendant, and receipt of the salary of the office of police commissioner of the city of New York, to which plaintiff claimed he was entitled.

Pending the appeal to this court said plaintiff died, and the present plaintiff was substituted.

Tho material facts are stated in the opinion.

*Samuel Hand & Malcolm Graham* for appellant.   The defendant not being a party to the *certiorari* proceedings, nor accepting a benefit thereby, is not bound by those proceedings. (*People, ex rel. Gilchrist,* v. *Murray,* 73 N. Y. 538; *People, ex rel. Steinart,* v. *Anthony,* 6 Hun, 142; *Mayor* v. *Flagg,* 6 Abb. 302; *Rex* v. *Hebden,* Andr. 388; *Rex* v. *Grimes,* 5 Burr. 2599; *Rex* v. *Mayor of York,* 5 D. & E. 66; *People, ex rel. Corwin,* v. *Walter,* 68 N. Y. 403; *Dale* v. *Roosevelt,* 1 Paige, 35; *York* v. *Steele,* 50 Barb. 397.)   The court cannot here inquire whether the defendant was rightfully in office. (*Mayor* v. *Flagg,* 6 Abb. 303; *Buffalo* v. *Mackay,* 15 Hun, 204; *People, ex rel. Steinart,* v. *Anthony,* 6 id. 142; New Code, § 3349, subd. 11, § 3352; *People, ex rel. Peabody,* v. *Att'y-Gen.,* 22 Barb. 114; *People, ex rel. Demarest,* v. *Fairchild,* 67 N. Y. 334; *S. C.* below, 8 Hun, 334; *Mott* v. *Connelly,* 50 Barb. 516; *Hart* v. *Harvey,* 5 Hill, 616; *People, ex rel. Faile,* v. *Ferris,* 76 N. Y. 326; *Mickles* v. *Rochester City Bk.,* 11 Paige, 118; *Demarest* v. *Wickham,* 63 N. Y. 320; *Buffalo* v. *Mackay,* 15 Hun, 204; *People* v. *A. & S. R. R. Co.,* 57 N. Y. 161; *People, ex rel. Corwin,* v. *Walter,* 68 id. 103; *People* v. *Sup. Queens Co.,* 1 Hill, 195; *Tappan* v. *Grey,* 9 Paige, 507; *Boyter* v. *Dodsworth,* 6 T. R. 681; *Howard* v. *Wood,* 2 Lev. 245; 2 Show. 21; Tho. Jones, 196; Freem. 473, 478; *Howard* v. *Queen's Trustees and Att'y-Gen.,* 2 Mod. 173; *Bradshaw* v. *Porter,* not reported; *Arris* v. *Stukely,* 2 Mod. 260; *Sergt. Rolle's Case,* Clayt. 129; *Lamini* v. *Dorrell,* 2 Ld. Raym. 12, 17; *Green* v. *Hewett,* Peake's N. P. 243; *People* v. *Vail,* 20 Wend. 12; *Mott* v. *Connolly,* 50 Barb. 516; *Hart* v. *Harvey,* 5 Hill, 616; *Platt* v. *Stout,* 14 Abb. 139; *People* v. *Stout,* 11 id. 17; *Lawler* v. *Alton,* 8 I. R. C. L. 162.)   The *certiorari* proceedings do not excuse the want of judgment in *quo warranto.* (*Crosbie* v. *Hurley,* 4 I. L. R. 225; *People, ex rel. Gilchrist,* v. *Murray,* 73 N.

Y. 535.) Even judgment of ouster does not give an absolute right to the emoluments of the office. (*People, ex rel. Burton,* v. *Vail,* 20 Wend. 12; *Dolan* v. *Mayor, etc.,* 68 N. Y. 274; *Mc Veay* v. *Mayor, etc.,* 80 id. 185; *Terhune* v. *Mayor, etc.,* 88 id. 247; *Stuhr* v. *Curran,* 44 N. J. L. 181.) Nichols did not own the office. (*Smith* v. *Mayor,* 5 N. Y. 285; *Connor* v. *Mayor,* 37 id. 518; *Long* v. *Mayor,* 81 id. 425.) Defendant was more than a *de facto* officer. (*Foot* v. *Stiles,* 57 N. Y. 403; *People* v. *Van Slyke,* 3 Cow. 237; *People* v. *Pease,* 27 N. Y. 45.) Rights acquired on the faith of a judgment are not affected by any irregularity of such judgment. (*People* v. *Nichols,* 79 N. Y. 582; *People* v. *Cooper,* 21 Hun, 517; *People, ex rel. Gere,* v. *Whitlock,* 92 N. Y. 191; *People, ex rel. Keech,* v. *Thompson,* 94 id. 451, 464; *Hunt* v. *Hunt,* 72 id. 217; Freem. on Judgm., §§ 104*b,* 135; *Lange* v. *Benedict,* 73 N. Y. 12; *Marshalsea Case,* 10 Co. 68, 78*b;* Tidd's Pr. 1032; *Olliett* v. *Bessey,* Tho. Jones, 214; *Groenvelt* v. *Beirwell,* 1 Ld. Raym. 454; *Saffrey* v. *Jones,* 1 Barn. & Ad. 598; *March* v. *Wooley,* 5 M. & G. 675; *Grey* v. *Cooksen,* 16 East, 13; *Andrews* v. *Mains,* 1 Q. B. 3; *Thomas* v. *Hudson,* 14 M. & W. 353; *Rex* v. *Leight,* 10 A. & E. 398; *Dawson* v. *Gregory,* 7 Q. B. 756; *Korn* v. *Mazuzan,* 6 Hill, 44; *Lamoine* v. *Caryl,* 4 Den. 370; *Roderigas* v. *E. R. Bank,* 63 N. Y. 460; *Lewis* v. *Dalton,* 8 How. 99; *Bumstead* v. *Read,* 31 Barb. 661; *Porter* v. *Purdy,* 29 N. Y. 106; *Barnes* v. *Harris,* 4 id. 374; *Van Steenburg* v. *Kurtz,* 10 Wend. 167; *Levison* v. *Burch,* 4 Hun, 315; *Von Rhade* v. *Von Rhade,* 2 T. & C. 491; *Cornell* v. *Lassells,* 29 Wend. 77; *Harmon* v. *Brotherson,* 1 Den. 537; *Easton* v. *Callender,* 11 Wend. 90; *Von Latham* v. *Libby,* 38 Barb. 339; *Pratt* v. *Bogardus,* 49 id. 90; *Savacool* v. *Boughton,* 5 Wend. 170.) Rights acquired on the faith of a judgment are not affected by a reversal of such judgment, but do fully and entirely survive such reversal. (*Dr. Drury's Case,* 8 Co. 141*b; Beverly* v. *Cornwall,* Moore, 269; *Appesly* v. *Ive,* Cro. Jac. 645; *Gold* v. *Strode,* 3 Mod. 324; *Phillips* v. *Biron,* 1 Strange, 509; *Turner* v. *Felgate,* 2 Sid. 125; *King* v. *Harrison,* 15 East, 615;

*Case* v. *De Goes*, 3 Caines, 261; *Van Brunt* v. *Schenck*, 11 Johns. 375; *Dewey* v. *Osborn*, 4 Cow. 329; *Bank U. S.* v. *Bk. of Washington*, 6 Pet. 18; *Costar* v. *Peters*, 7 Robt. 386; *People, ex rel. Davis*, v. *Sturtevant*, 9 N. Y. 263; *Porter* v. *Purdy*, 29 id. 106; *Ebaugh* v. *Germ. Ref. Church*, 3 E. D. Smith, 60; *Woodcock* v. *Bennett*, 1 Cow. 711; *Place* v. *Reilly*, 98 N. Y. 1; *Blakely* v. *Calderer*, 15 id. 97; *Wood* v. *Jackson*, 8 Wend. 9; *Holden* v. *Sackett*, 12 Abb. 473; *Hennig* v. *Parnett*, 4 Daly, 543; *Clark* v. *Davenport*, 1 Bosw. 95; *McJilton* v. *Love*, 13 Ill. 486; *Loring* v. *Illsley*, 1 Cal. 24; *Bk. of Ky.* v. *Van Meter*, 10 B. Monr. 66; *Frost* v. *McLeod*, 19 La. Ann. 69; *Rogers* v. *Evans*, 8 Ga. 143; *Boggers* v. *Howard*, 40 Tex. 153; *McDonald* v. *Napier*, 14 Ga. 89; *Reno* v. *Pinder*, 20 N. Y. 298; *Bascom* v. *Smith*, 31 id. 595; *People* v. *Police Comm'rs*, 98 id. 332.) Nichols by his acts acquiesced in MacLean's occupation of the office. (*Hadley* v. *Mayor*, 33 N. Y. 603; *People* v. *Murray*, 73 id. 535; *McVeany* v. *Mayor*, 80 id. 185; *Sadler* v. *Evans*, 4 Burr. 1984.) If the plaintiff has any remedy, it is against the parties to the removal. (*Terhune* v. *Mayor*, 88 N. Y. 24; *Hover* v. *Backhoof*, 44 id. 113; *Bennett* v. *Whitney*, 94 id. 302.)

*John D. Townsend* for respondent. The proceedings brought in the name of the people, to-wit, the *certiorari* to review the judicial action of the mayor, was a proceeding *in rem.* (2 Phill. on Ev. 262, 266; Freeman on Judgments, 504, § 606; *People, ex rel. Steinart*, v. *Anthony*, 6 Hun, 142; *Rex* v. *Mayor of York*, 5 Durnf. & East, 66; *Mayor, etc.*, v. *Flagg*, 6 Abb. 296, 302; *McVeany* v. *Mayor, etc.*, 80 N. Y. 189; *Pitman* v. *Town of Albany*, 34 N. H. 577–582.) No action of *quo warranto* was necessary in this case. The proceedings upon which the mayor pretended to have removed the plaintiff and appointed the defendant to fill his place were pronounced void by this court, and such judgment was affirmed at General Term in an action brought in the name of the people. (*Hunter* v. *Chandler*, 10 Am. L. R. 440; *In re Harris*, 6 A. & E. 475;

*People, ex rel. Taylor,* v. *Thompson,* 16 Wend. 654; *People, ex rel. Devlin,* v. *Peabody,* 6 Abb. Pr. 234; *Mayor* v. *Flagg,* id. 296; *Dorsey* v. *Smith,* 28 Cal. 21; *People* v. *Miller,* 24 Mich. 460; *Comstock* v. *City of Grand Rapids,* 4 id. 397; *People, ex rel. Morton,* v. *Tiernan,* 8 Abb. Pr. 359.) There is nothing in the Code which prevents the plaintiff from bringing his action against defendant for money received. (§§ 1949–1953, Code; *Crittenden* v. *Wilson,* 5 Cow. 165; *Stafford* v. *Ingersoll,* 3 Hill, 39; Sedg. on Stat. and Const. Law, 402; Comyn's Dig. 93.) In a common-law action for the recovery of fees of an office, the title to the office may be tried in a court of law. (*Howard* v. *Wood,* 2 Levinz, 245; *Boyter* v. *Dodworth,* 6 Tenn. 681; *Astor* v. *Woodward,* 2 Mod. 95, 96; 1 Vent. 269; 1 Freem. 429; *Green* v. *Hewett,* Peake's Nisi Prius Cas. 243; *Lightly* v. *Clinton,* 1 Taunt. 112, 114, 115; *Allen* v. *McKeen,* 1 Sim. 277–317; *Platt* v. *Stout,* 14 Abb. Pr. 179; *Mayfield* v. *Moore,* 53 Ill. 429; *Palmer* v. *Foley,* 45 How. Pr. 110; *Tappan* v. *Grey,* 7 Hill, 259.) The legal title to the office of police commissioner, as between the plaintiff and defendant in this action, having been determined in favor of the plaintiff by the *certiorari* proceedings brought against the mayor, the plaintiff is justified in claiming that the services of the defendant to the city were rendered for him, and that the salary the defendant drew for such services belonged to the plaintiff. (*Dolan* v. *Mayor, etc.,* 68 N. Y. 278, 279, 283; *Harwood* v. *Wood,* 2 Lev. 245; *Glosbeck* v. *Lyons,* 20 Ind. 1.)

ANDREWS, J. The facts, upon which this controversy depends, are few and substantially undisputed. The plaintiff was duly appointed police commissioner of the city of New York, for a term of six years from May 1, 1876, and duly qualified and entered upon and discharged the duties of the office until April 18, 1879. On that day the mayor of the city appointed the defendant, MacLean police commissioner for the unexpired term of the plaintiff Nichols, the certificate of appointment reciting that the appointment was made by the mayor in pursuance of

chapter 300 of the Laws of 1874, in place of Sidney P. Nichols, removed.  Prior to the appointment of the defendant MacLean, the mayor had preferred charges against Nichols of official delinquency, upon which such proceedings were had that on the 5th day of April, 1879, the mayor made a certificate in writing removing the plaintiff from his office of police commissioner, which certificate with the reasons therefor he transmitted to the governor, who on the 17th day of April, 1879, approved in writing of such removal.   The plaintiff in June, 1879, applied for a writ of *certiorari*, to review the proceedings removing him, which was issued August 12, 1879, addressed to the mayor who made return thereto, and on February 11, 1880, judgment was rendered in the proceeding declaring that the proceedings of the mayor for the removal of Nichols and his judgment of removal " be and are hereby reversed, and in all things held for naught." The judgment, as appears from the opinion delivered by the court, proceeded upon the ground that no evidence was given before the mayor to sustain the charges made against Nichols, and that he was denied the right to be heard by counsel. The defendant, MacLean, on the 18th day of April, 1879, on presenting his certificate of appointment was recognized by the board of police commissioners as commissioner in place of Nichols, and thereupon assumed the duties of the office and continued to act as police commissioner until February 7, 1880, on which day the decision of the court in the *certiorari* proceeding having been called to the attention of the board, Nichols was officially recognized as commissioner, and on that day resumed, and thereafter continued to discharge the duties of the office. During the period between the 17th of April, 1879, and the 7th of April, 1880, the defendant drew and received from the city of New York, $4,700, the salary for that time of the office of police commissioner.   It is found that the plaintiff during the time he was excluded from office was ready and willing to perform the duties thereof, and it was proved that the plaintiff on the 18th day of April, 1879, upon presentation by the defendant of his certificate of appointment protested to the defendant that his removal was unauthorized and that there was no

vacancy to be filled by the mayor. This action is brought to recover the salary received by the defendant during the time he served as police commissioner under the appointment of the mayor, and the sole question is whether, upon the facts found, the action lies.

It is convenient to consider in the outset what right the plaintiff acquired by virtue of his appointment as police commissioner in May, 1876. The term and salary of the office were fixed by statute. The plaintiff was entitled by virtue of his appointment, to a term of six years, and to an annual salary of $6,000, subject, however, to removal from office by the mayor for cause, after an opportunity to be heard. (Laws 1873, chap. 335, § 25.) The plaintiff could not be deprived of his office or his salary, except under authority of law. His right to the possession and emoluments of the office unless forfeited by his misconduct or his office was voluntarily abandoned or taken away by law, was "as perfect a right as the title of any individual to his property, real or personal." (SANFORD, J., *Conner* v. *The City*, 2 Sandf. 370.) It is true that in this country offices are not hereditaments, nor are they held by grant. The right to hold an office and to receive the emoluments belonging to it does not grow out of any contract with the State, nor is an office property in the same sense that cattle or land are the property of the owner. It is, therefore, the settled doctrine that an officer acquires no vested right to have an office continued during the time for which he was elected or appointed, nor to have the compensation remain unchanged. The legislature may abolish an office during the term of an incumbent, or diminish the salary, or change the mode of compensation, subject only to constitutional restrictions. (*Conner* v. *Mayor, etc.*, 5 N. Y. 285.) But within these acknowledged limits, the right to an office carries with it the right to the emoluments of the office. An office has a pecuniary value, although primarily it is an agency for public purposes. The doctrine that the right to the emoluments of an office follows the true title, has been repeatedly declared in this State. (ALLEN, J., *People* v. *Tieman*, 30 Barb. 193; *Dolan* v. *The Mayor*, 68 N. Y. 274; *McVeany*

v. *The Mayor*, 80 id. 185.) And these decisions are enforced by the cases which hold that in an action by an officer to recover fees, his title may be put in issue, and that an action therefor cannot be maintained by an officer *de facto* only. (BRONSON, J., 1 Denio, 579, and cases cited ; *People* v. *The Co. of Bedford*, 7 S. & R. 392.) The plaintiff, therefore, by his appointment acquired a right to hold the office of police commissioner for six years, and to receive the salary, subject to removal upon a hearing, for cause, which right, although not technically property, was valuable and is under the protection of the law. From a very early period of the law, the invasion of a right to hold and exercise the duties of a public office has been recognized as a legal wrong for which the law affords a remedy. The writ of *quo warranto* was an ancient writ to try the right of one holding a public office (2 Bl. Com. 263), and in England from an early day, an action for money had and received would lie in behalf of one entitled to an office, to recover the accustomed fees of the office received by an intruder. (*Harwood* v. *Wood*, 2 Lev. 245 ; *Greene* v. *Hewitt*, Peake's N. P. 243 ; *Boyter* v. *Dodsworth*, 6 Term R. 681; 1 Selw. N. P. 81.) That the action of the mayor in removing the plaintiff was wrongful, was adjudicated in the *certiorari* proceedings, and from the judgment therein, no appeal was taken. This court also decided in *People, ex rel. Mayor*, v. *Nichols* (79 N. Y. 582), which was a proceeding for prohibition, that a *certiorari* was a proper remedy to review the action of the mayor. The effect of the judgment in the *certiorari* was to annul the mayor's proceedings, and was followed by a reinstatement of the plaintiff in the office from which he had been unlawfully removed. Whether the judgment *ipso facto* worked a reinstatement of the plaintiff, we need not consider. The defendant voluntarily surrendered the office to the plaintiff, or at least he acquiesced in his resuming possession. The record in the *certiorari* proceedings was admitted in evidence on the trial in this case against the objection of the defendant and it is claimed that the ruling is erroneous for the reason that the defendant was not a party to the proceedings and that as to him the judg-

ment therein did not establish that the removal was wrongful. The general rule that the estoppel of a judgment extends only to parties and privies is well settled. It is not always easy to determine who are privies within the rule. The *certiorari* as this court held was a proper proceeding. The mayor under the statute was vested with the power of removal to be exercised in a particular manner and under certain limitations affecting the right of the person whose removal was contemplated. These limitations were not observed, and the removal was, therefore, held to be unauthorized. The defendant held the office under an appointment by the mayor which on its face declared that he was appointed to fill a vacancy caused by the removal of Nichols. The defendant derived his title from the mayor, and the mayor, as was adjudged in the *certiorari* proceedings had at the time no power to make an appointment, because there was no vacancy. It has been held that where the title to a corporate office has been determined in a litigation between conflicting claimants in a proceeding by *quo warranto*, the adjudication is competent evidence against the corporation in an action for salary, or to compel the corporation to certify an election, and also that where the title to office of a person exercising the power of appointment has been adjudged against him, the judgment is admissible against his appointee on the ground that his title must abide by that of the person from whom he derives title. (*Mc Veaney* v. *The Mayor, supra ; Rex* v. *Hibden,* And. 388 ; *Rex* v. *Grimes,* 5 Burr. 2598 ; Lord KENYON in *Rex* v. *The Mayor of York,* 5 Term R. 66.) These cases, although not precisely in point are analogous to the one before us. The defendant derives title under an appointment by the mayor; it has been adjudged in a proper proceeding against the mayor that he had no authority to make the appointment and that the plaintiff was improperly removed ; the proceeding had some of the characteristics of a proceeding *in rem ;* it was an investigation made under competent authority, in the name of the people, concerning matters of public as well as private interest, and to ascertain the status of the plaintiff. We think the

record was competent evidence against the defendant. Whether it was conclusive in the absence of collusion or fraud need not be determined, as no affirmative evidence was offered by the defendant in support of his title outside of the formal papers. It is further insisted that in this State, the title to an office cannot be tried in an action against an intruder for the salary, and that it can be determined only in a proceeding by *quo warranto* or since the Code by a direct action in the nature of a *quo warranto* instituted by the attorney-general. The remedy by information in the nature of a *quo warranto*, under the Revised Statutes, authorized a judgment not only upon the right of the defendant, but also upon the right of the party averred to be entitled (2 Rev. Stat. 582, § 31), and in case the right of the claimant was established by the judgment he was authorized upon filing a suggestion to recover the damages sustained by reason of the usurpation of the defendant (§ 34). The courts held that they would not at the instance of a person out of possession of an office try the title to the office by *mandamus* or other proceeding, but would leave him to his remedy by information, and it has been said in several cases that the title could only be tried in that proceeding. (*People* v. *Stevens*, 5 Hill, 616; *People* v. *Vail*, 20 Wend. 12; *People* v. *Ferris*, 76 N. Y. 326; *People* v. *Lane*, 55 id. 217.) These cases proceed upon an intelligible principle. It would be productive of great inconvenience if a person out of possession should be permitted before ousting the person in possession and establishing his own title by a direct proceeding, to maintain an action against the intruder for the salary the result of which would neither put the intruder out of, nor the plaintiff into the office, and to have the title to an office decided in a collateral proceeding in which the people were not represented. But in this case the *de jure* officer has been restored to the possession from which he was wrongfully ejected. It has been judicially determined in a proceeding in behalf of the people that his right to the office was never legally interrupted. The defendant was not in possession when the action was commenced, and an action under the Code to eject him from the office could

not be maintained. Where the further prosecution of the pro-
ceeding by *quo warranto* is necessary to accomplish a purpose
beyond the ouster of the defendant, the proceeding does not
necessarily abate by the voluntary surrender of the office by the
defendant after the proceeding is instituted. (*Queen* v. *Blizard*,
L. R., 2 Q. B. 55.) It is however the general rule that *quo war-
ranto* will not lie where the office is vacant. (*Rex* v. *Whitwell*, 5
Term R. 85.) But it is insisted that, conceding the unlawful expul-
sion, and the intrusion by the defendant, it is not *res adjudicata*
in this State that an action can be maintained by the party dis-
possessed, against the intruder, to recover the emoluments of the
office received by him. In the case of *Dolan* v. *Mayor, etc.*
(*supra*), it was assumed that such an action could be maintained,
and authorities were cited to maintain the proposition. The de-
termination of this question was not, perhaps, essential to sustain
the judgment in that case. But we think the doctrine is well
founded in reason and authority. The plaintiff being the
officer *de jure*, was entitled to earn the salary. It is true that
he did not render the service for which the salary is the com-
pensation. But he was ready and willing to render it, and was
prevented by the conjoint acts of the mayor and the defendant.
The case of *Mc Veany* v. *The Mayor* (*supra*) shows that the right
to the salary of an office is not necessarily dependent upon the
actual rendition of service by the claimant. In that case the
plaintiff was allowed to recover from the city, salary from the
time judgment of ouster against the incumbent was pronounced,
although the plaintiff rendered no personal service and the
salary had been paid to the intruder. In the *Dolan Case*
(*supra*), the claimant recovered the salary unpaid during
the time Keating discharged the duties of the office. The
provisions of the Revised Statutes to which reference has
been made, allowing the recovery of damages by the officer
*de jure* against an intruder, proceed upon the assumption that
the former may recover of the latter what he has lost by
the usurpation. The revisers in their note upon this subject (5
Edm. St., p. 774), say that it was intended to enlarge the
scope of the remedy by information, so as " to provide

for the recovery of the fees received by the defendant." The exclusion of a *de jure* officer from his office is a legal wrong committed by the intruder. In a legal view it is immaterial that the defendant may have acted in good faith, or .that he supposed he had the better title. A good motive is not an adequate answer to a claim for indemnity for a violated right. There is a great preponderance of authority in support of the doctrine that the *de jure* officer can recover against an intruder, the damages resulting from the intrusion, and that as a general rule, the salary annexed to the office and received by the defendant measures the loss. (*Dolan* v. *Mayor, etc., supra ; Lawlor* v. *Alton*, L. R., 8 Ir. 160 ; . *Glascock* v. *Lyons*, 20 Ind. 1 ; *Douglass* v. *State*, 31 id. 429 ; *People* v. *Miller*, 24 Mich. 458.; *Dorsey* v. *Smith*, 28 Cal. 21 ; *Segan* v. *Crenshaw*, 10 La. Ann. 239 ; *U. S.* v. *Addison*, 6 Wall. 291.) But as a final point the defendant invokes for his protection, the doctrine which protects rights acquired on the faith of a judgment, notwithstanding its subsequent reversal. We think this doctrine is inapplicable to the case. The appointment of the mayor and the defendant's assumption of office thereunder, made him an officer *de facto* merely. "An officer *de facto*," says Chancellor WALWORTH, "is one who comes into a legal and constitutional office, by color of a legal appointment or election to that office." (*People* v. *White*, 24 Wend. 518, 539.) The proceeding of the mayor in removing Nichols, was so far judicial as to authorize it to be reviewed on *certiorari*. It was not a proceeding in a court of justice under the forms and solemnities of judicial proceedings in courts, to establish the rights of litigants. The defendant did not acquire his title to the office under the so-called judgment rendered by the mayor, but under a separate and distinct proceeding subsequent thereto, by which the defendant became invested with the character of an officer *de facto*. It is abundantly settled by authority that an officer *de facto* can as a general rule assert no right of property, and that his acts are void as to himself, unless he is also an officer *de jure*. (*Greene* v. *Burke*, 23 Wend. 490; *People* v. *Nostrand*, 46 N. Y. 375 ; BRONSON, J., in *People* v.

*Hopson, supra.*) In Cro. Eliz. 699, the doctrine is tersely stated : " The act of an officer *de facto*, when it is for his own benefit, is void ; because he shall not take advantage of his own want of title, which he must be conusant of ; but where it is for the benefit of strangers, or the public, who are presumed to be ignorant of such defect of title, it is good." I have been unable, after a diligent examination, to find any case which sustains the claim that an illegal exercise of the power of appointment to office, by an executive officer, to fill an assumed vacancy, confers additional protection upon the appointee, because coupled with the fact of a prior summary removal of the rightful incumbent by the same officer, in the exercise of a *quasi* judicial discretion. In the *Dolan Case* (*supra*), the appointment of Keating was made under an ambiguous statute, under a claim of right, and was regular in form, but the court were of opinion that this would not protect him against a suit by the officer *de jure* to recover the salary received by him. We think there is no solid distinction between the cases. The defendant took the risk of the validity of his title, and the loss should fall upon him rather than upon the plaintiff.

Upon the whole case we are of opinion that the judgment should be affirmed.

All concur, except RAPALLO and MILLER, JJ., not voting.

Judgment affirmed.