## Rogers, et al. v. Samples.

(Decided February 3, 1925.)

## Appeal from Lee Circuit Court.

1. **Champerty and Maintenance—Attorney's Contract Whereby he was to Receive as Compensation One-half Proceeds of Oil and Gas Lease on Land Involved Held Void.**—Attorney's contract for defense of proceeding by execution purchaser for possession of

land, for which he was to receive one-half of proceeds of oil and gas lease to be given on such land, held void under Ky. Stats., section 209.

2. Contracts—Rule that Court will Leave Parties to Unlawful Contract where it Finds them has Exception, where Parties are Not of Equal Fault, and Transaction is Only Malum Prohibitum.—Though ordinarily law will leave parties who have made and executed a contract in violation of law where it finds them, an exception exists where parties are not in equal fault and transaction is only malum prohibitum.

3. Champerty and Maintenance—Illiterate Woman, Entering into Champertous Contract with Brother-in-Law, Held Entitled to Equitable Relief, though Liable for Services Rendered Her.—Ignorant and apparently illiterate woman, who relied upon her brother-in-law, an attorney, and at his suggestion entered into void and champertous contract with him for defense of her title to land, held, in view of confidential relation, entitled to equitable relief, notwithstanding invalidity of contract, but liable for reasonable value of the services rendered her.

S. P. STAMPER for appellants.

ROBERTS & PENDERGRASS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

H. D. Rogers is a brother-in-law of Miss Emily Samples. She owns a tract of land in Lee county, which she inherited as her part of her father's estate and on which she resided. Some years ago her brother, Albert Samples, bought a horse from George Williams for $300.00; she and Sarah Samples, her sister, signed the note executed to Williams by Albert Samples. Williams sued upon the note and obtained judgment against all three of them. Execution was issued upon the judgment and levied upon the land of Miss Emily. The land was sold under the execution and was bid in by Williams for his debt. It was not redeemed within twelve months and Williams entered a motion in the Lee circuit court for possession of the property at the November term, 1917. After this proceeding was begun Miss Emily entered into a written contract with H. D. Rogers, setting out the foregoing facts and agreeing that in consideration of his prosecuting the defense to that proceeding and paying the cost and expenses of the suit to its final successful termination, in favor of Miss Emily, then and in that event he was to lease the land for oil and gas and to receive one-half of the proceeds received from the lease

and one-half of the royalty therefrom for his services and money expended in defending the suit. By the writing Miss Emily agreed to execute and deliver on the order of Rogers a lease to the parties to whom he leased the land, authorizing them to develop the property for oil and gas.

Rogers defended the suit successfully on the ground that the land was exempt as a homestead. The judgment was entered at the November term, 1917. On January 25, 1918, Miss Samples executed the oil and gas lease. H. D. Rogers and his wife joined in the lease, but only for the reason that Mrs. Rogers had not released her interest in the land. Rogers collected, under the lease, between seven and eight hundred dollars. He paid Miss Emily $356.28, which was a little more than half of what he collected up to that time. On October 24, 1918, she brought this suit against him, in which she set up the facts above stated as to the contract and lease, alleging that the contract and lease were obtained by fraud and prayed judgment against Rogers for the money he had received. Rogers filed an answer denying the allegations of fraud, pleading the contract and alleging that he had paid over to her one-half the money he had received up to the time of the bringing of the action and had tendered to her one-half of what he had received since the suit was brought and that she had refused to receive it. By her reply to the answer she pleaded, among other things, that the contract between her and Rogers was champertous and void, because it was for a part of the subject mattter in litigation and that Rogers had no right to enter into a contract for a part of the land in controversy. Proof was taken and on final hearing the circuit court entered judgment in favor of the plaintiff against Rogers for the sum of $213.00, with interest from the filing of the petition. Rogers appeals.

Section 209, Kentucky Statutes, is in these words:

"All contracts, agreements, and conveyances made in consideration of the services to be rendered in the prosecution or defense, or the aiding in the prosecution or defense, in or out of court, of any suit, by any person not a party on record in such suit, whereby the thing sued for or in controversy, or any part thereof, is to be taken, paid or received by such person for his services or assistance, shall be null and void."

Very clearly under this statute the contract that Rogers was to have one-half of the proceeds of the lease for his services and money expended in defending the suit was void. For this was plainly a contract for a part of the thing in controversy. But the parties had carried out the contract; Rogers had successfully defended the suit and paid the expenses. Miss Samples had made the lease and Rogers had collected the money under the lease and divided it between them pursuant to the contract. Ordinarily where parties have made a contract in violation of law and have executed it, the law leaves them where it finds them. But there is an exception to the rule where the parties are not in equal fault and the transaction is only *malum prohibitum.*

"In many cases of illegal contracts or transactions, the parties are not deemed to be in equal fault, since there are degrees of crime and wrong. A distinction has been taken between those illegal contracts both parties to which are equally culpable, and those in which, although both have participated in the illegal act, the guilt rests chiefly upon one. The maxim, *ex dolo malo non oritur actio,* is qualified by another, viz., *in pari delicto melior est conditio defendentis.* Unless, however, the parties are *in pari delicto* os well as *particeps criminis,* the courts, although the contract is illegal, will afford relief, where equity requires it, to the more innocent party, even after the contract has been executed." 6 R. C. L., p. 833.

"The existence or nonexistence of confidential relations between the parties in fault is an important element in determining whether they are *in pari delicto.*" 6 R. C. L., p. 834.

In Gray v. Roberts, 2 A. K. Mar. 208, this rule was applied by this court in an action to recover money paid for lottery tickets sold in violation of law. It is supported by the authorities. See notes to that case; 12 Am. Dec. 385; notes 52 Am. Dec. 758; 2 Greenleaf on Evidence, sec. 121.

One of the purposes of the statute above quoted is the protection of persons who are sued for their property, from improvident contracts parting with part of it in consideration of services in defending the suit; for under such circumstances improvident contracts may be obtained which would not otherwise be made.

Miss Samples signed each of the papers by making her mark. She says she could not see to read them and, as we gather from the record, she cannot read or write. She is an ignorant country woman, living some distance from the county seat. H. D. Rogers was her brother-in-law. He went to see her when the suit was filed and the arrangement was made by her with him upon his suggestion. She naturally looked to him for advice and guidance. A confidential relation existed and under the authorities she is clearly entitled to relief.

But she must take relief in equity upon equitable principles. There was no fraud in the contract. She understood perfectly the arrangement. The fact is, before she signed the lease she called in other members of her family, including her older brother, and the lease was executed upon his advice. Under the testimony in the case Rogers has in his hands about $100.00 after paying the necessary expenses which he incurred. This is all he has left of the money he received except what he has paid over to her or for her. The judgment against him is for $213.00, which takes from him $100.00 of his own money and leaves him without any compensation for his services. The contract being fair and he having performed his part of it he should be paid a reasonable compensation for the services he rendered under it and he should be credited by all the necessary expenses he has incurred under it. The case has not been so prepared as to enable us to settle it intelligently on the basis indicated. On the return of the case to the circuit court either party will be allowed to take further proof and the court will then settle the account between the parties and enter judgment accordingly.

"Notwithstanding the contract is champertous, the appellee accepted the appellants' services, and the law raises a promise on the part of the appellee to pay them a fair and reasonable compensation therefor." Leonard v. Boyd, 24 R. 1320, 71 S. W. 508.

A judgment will be entered declaring the contract, above referred to, void and adjudging to Miss Samples all the proceeds of the lease not received by Rogers.

Judgment reversed and cause remanded for further proceedings consistent herewith.